Peelle, Ch. J.,
delivered the opinion of the court: ,
In October, 1900, the claimant, while serving as a copyist in the Bureau of Supplies and Accounts in the Navy Department,’ at a salary of $1,200 per annum, is, upon the recommendation of the Paymaster-General, with’ the approval of the Secretary of the Navy, appointed'by the President under the act of-June 7, 1878 (20 Stat. L., 101), a notary public in the District of Columbia to serve for five years.
While serving as' such' clerk he also performs the duties of notary public in administering to the Paymaster-'General oaths to certain affidavits annexed to contracts executed by that officer with various persons under'Revised Statutes,'sections' 3743, 3744, and 3745, for which services the claimant is paid by said officer through the Bureá'u of Supplies and Accounts. , ■
Thereafter, in October, 1904," and while the claimant'is still holding the office of notary public,' he is appointed civilian assistant to the Bureau of'Supplies and’ Accounts, to perform the duties of chief clerk' at the salary of $2,500 per annum, authorized by the act of March 18,1894. (33 Stat. L., 121.)
While holding the latter ‘office and receiving the salary attached thereto the claimant continues to act as notary public in administering oath's as aforesaid until he has administered to said officer 3,024 oaths to affidavits, to which affidavits he *422 attaches his jurat or certificate and signs the same and affixes his seal thereto. For these services no compensation has been paid to him because at the time of rendering said services he was holding the office of civilian, assistant, with a salary-attached thereto of $2,500 per annum.
In January, 1905, after the claimant had administered a large number of said oaths, the Secretary of the Navy issued an order wherein it was provided- that no- officer, clerk, or employee in the executive service of the Government who was also a notary public should thereafter “ receive any compensation whatever for performing any notarial act for an officer, clerk, or employee of the Government in his official capacity, or in any matter in which the Government is interested, or for any person when, in the case of such person, the act is performed during the hours of such notary’s service to the Government.” But in March following that order was modified so as not to apply to oaths required by law when the services were performed out of regular office hours. Of the oaths so-administered 861 were administered after said order was modified, all the others being administered prior thereto.
A claim for the services so rendered as notary public,’ at the rate of 50 cents for each oath and certificate and seal thereto, was- presented to the Comptroller of the Treasury, who disallowed the same on the ground' that the position of notary public was an office to which compensation was attached-within-the'meaning of the act of July 31, 1894 (28 Stat.L., 205), which act he says- “prohibits the holding by one person of two offices under the Government-if the salary or' compensation attached to the one equals the sum of -$2,500 per annum and -any compensation-, is attached to the other.”
That a notary public is a public officer, and-recognized as such, the authorities are abundant; -nor is it controverted in this case, but see Throop on Public Officers, pc 10; Meacham’s Public Offices and Officers, sec. 47; Am. and Eng. Enc. of Law, 2d ed., vol. 21, p. 55, and authorities there cited; United States v. Hartwell (6 Wall., 385); Britton v. Nicolls (104 U. S., 766), and Pearce v. Inseth (106 U. S., 549). An “ office ” is defined to be “ a right to exercise a public function or employment and to take the fees and emoluments belonging to it.” (Bouvier’s Law Dictionary.)
*423 The compensation attached to the office of notary. public is by way of fees for specific services, both” being'fixed by statute, and in the present case by section 571, Code-of Laws for District of Columbia. The services herein claimed for were rendered to and the compensation therefor is claimed' from the Government by virtue of said office..
Eevised Statutes, section 1763, prohibits . everyone who holds an office;, the salary or annual compensation attached to which amounts to $2,500, from'receiving “compensation for discharging the duties of any other office, unless expressly authorized by law.”
Section 1764 in express terms prohibits any allowance, or compensation to any officer for “ the discharge of duties which belong to any other officer ” in any department, or “ for any extra services whatever which any officer or clerk may be required to perform, unless expressly authorized by law.”
Section 1765 is even-more, stringent, as it applies to “ any officer in any branch of the public service, or any other person whose salary, pay, or emoluments are fixed- by law or regulations,” and as to such it is provided that they shall not receive “ any additional pay, extra allowance, or compensation, in any form whatever, * * * for any service or duty whatever, unless the same is authorized by law, .and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation:” •
The statutes referred to have been repeatedly construed, both by this court and the Supreme Court. In respect to sections 1763 and 1765, the court, in the case of Converse v. United, States (21 How., 463, 473), said: “ The just and fair inference from these acts of Congress, taken together, is that no discretion is left to the head of a Department to allow an officer who has a fixed compensation any credit beyond his salary, unless the service he has performed is required by existing laws and the remuneration for them is fixed by law.” (See also United States v. Shoemaker, 7 Wall., 338.) And, referring to section 1765, the court, in the case of Hoyt v. United States (10 How., 109, 141), said: “ It is impossible to misunderstand this language or the purpose and intent of the enactment. It cuts up. by the ro'ots these claims by public *424 officers for extra compensation on the ground of extra services. There is no discretion left in any officer or tribunal to make the allowance, unless it is authorized by some law of Congress. The prohibition is general and applies to all public officers, or quasi public officers, who have a fixed compensation.”
By the act of June 20,1874, section 2 (18 Stat. L., 85,109), it is provided “ That no civil officer of the Government shall hereafter receive any compensation or perquisites, directly or indirectly, from the Treasury or property of the United States beyond his salary or compensation allowed by law * * * )>
In the case of United States v. Saunders (120 U. S., 126, 129), where sections 1763, 1764, and 1765 were under construction, the court said:
“ We are of opinion that, taking these sections all together, the purpose of this legislation was to prevent a person holding an office or appointment, for which the law provides a definite compensation by way of salary or otherwise, which is intended to cover all the services which, as such officer, he may be called upon to render, from receiving extra compensation, additional allowances, or pay for other services which may be required of him either by act of Congress or by order of the head of his Department, «or in any other mode, added to or connected with the regular duties of the place which he holds; but that they have no application to the case of two distinct offices, places, or employments, each of which has its own duties and its own compensation, which offices may both be held by one person at the same time. In the latter case he is in the eye of the law two officers, or holds two places or appointments, the functions of which are separate and. distinct, and, according to all the decisions, he is in such case entitled to recover the two compensations. In the former case he performs the added duties under his appointment to a single place, and the statute has provided that he shall receive no additional compensation for that class of duties unless it be so provided by special legislation.”
Such also was the ruling in the case of United States v. McCandless (147 U. S., 692), where, respecting the application of those sections of the statute to. a clerk who also held the office of commissioner of a circuit court, it was said:
“ It was held by this court in the case of United States v. Saunders (120 U. S., 126) that sections 1763, 1764, and 1765 *425 had no application to the case of two distinct offices,, places, or employments, each with its own compensation and duties, held by one person at the same time. We think that, within the rule laid down in that case, there is no legal 'objection to the same person holding the offices of clerk and commissioner; and that the person so holding them is entitled to the fees and emoluments of both.”
The purposes of those statutes as thus construed were manifestly :
1. To prevent any person holding an office with a salary of $2,500 from receiving any compensation for discharging the duties of any other office, unless expressly authorized by law.
2. To prevent the payment to any officer of compensation for performing the duties which belonged to any other officer or for any extra service whatever which such officer might be required to perform in the discharge of the duties of his office unless expressly authorized by law.
3. To prevent the allowance of additional pay, extra allowance, or compensation in any form whatever to any officer in any branch of the public service whose salary is fixed by law, for any other service or duty whatever, unless the same is authorized by law and the appropriation therefor expressly states that it is for such additional pay, extra allowance, or compensation.
It would be difficult to conceive of statutes more explicit for the purposes indicated, but as they did not prevent the holding by the same person of “ two distinct offices, places, or employments, each with its own compensation and duties,” the Congress, soon after the decision in the case last’ cited, passed the act of July 31, 1894 (supra), which, so far as applies to this case, reads: ‘ • ■
“ Sec. 2. * * * No person who holds an office the salary or annual compensation attached to which’ amounts to the sum of two thousand five',hundred dollars, shall be appointed to or hold any other office to which compensation is attached, unless specially heretofore or hereafter specially authorized thereto by law; but this shall not apply to retired officers of the Army or Navy whenever they may be elected to public office or whenever the President shall appoint them to office by and with the advice and consent of the Senate.” '
*426 Here again we Have language free from ambiguity, which, in express terms, prohibits every person who holds an office with an annual, salary of $2,500 from being appointed to or from holding “ any other office to which compensation is attached,” unless specially authorized by law.
The only exception there stated is that the’ act shall not apply to retired officers of the Army or Navy whenever they may be elected to public office or whenever the President shall appoint them to office by and with the advice and consent of the Senate.
In the case of United States v. Harsha (172 U. S., 567, 572), the claimant therein, while serving under appointment as clerk of the Circuit Court of .the United States for the Eastern District of Michigan, was appointed clerk of the United States Circuit Court of Appeals for the Sixth Circuit, and took his oath of office and filed the required bond. For services rendered by him as clerk of .the Circuit Court he forwarded his accounts through the Attorney-General to the Treasury Department, and the Comptroller, decided that a vacancy existed in the office of clerk'of the Circuit Court after a certain date, because thereafter the claimant had continued to hold the office of clerk of the Circuit Court of Appeals, the annual compensation attached to which was $3;000.
The question in relation thereto, as stated by the court, is whether the act of 1894, supra, “ ex proprio vigore, created a vacancy in the office of clerk of the circuit court, £ by reason of the fact that at the time of its taking effect the then lawful incumbent of that office was also holding the office of clerk of the circuit court of appeals.’ ” And in respect thereto the court said:
“ If the appointment to the other office were made after the passage of the act; it might well be held to be void, leaving the person in possession of the first office.' But when, at the time of the passage of the act, a person is holding two offices, to each of which compensation is attached, and the compensation of either or both of which is by an annual salary, the act does not say which of the two offices he shall be deemed to have resigned, or which of the two he shall continue to hold. If the compensation of each office were a fixed salary of $2,500 or more, an election by the incumbent *427 would be the only possible method of determining which office he should continue to hold. He must have the same right of' election between the two offices, when one is paid by a fixed salary and the other by fees. The act, while it makes the two offices incompatible for the future, does not undertake to compel the defendant to give up the office, which is paid by fees when he prefers to hold that office and to give up the one which is paid by a salary.”
Before the passage of the act. of 1894 the claimant in that case had tendered his resignation as clerk of the Circuit Court of Appeals, but the same had not been accepted. It was contended that inasmuch as the salary attached to that office wras $3,000 per annum, while fees attached to.the other office, therefore upon the passage, of the act of 1894 a vacancy was thereby created in the office of clerk of .the Circuit Court, and in relation thereto the court said:
“ Even if his resignation of this office could not take full effect until accepted, yet such resignation, coupled with his unequivocal intention to retain the other office, prevented the act of Congress from creating,-.of its own force and independently of any action of his, a vacancy in that office. The fact that so long as his resignation of the one office had not been accepted — and while he continued to perform the duties of both offices, he claimed the' compensation attached to both, whether this was' owing to his overlooking the provision in question, or to his own understanding of its effect — has no tendency to show that he elected to retain the office which he had resigned and to give up the other.”
A fair inference from that language is that but for the resignation so presented by the claimant the law would of its own force have created a vacancy in the office of clerk of the circuit court, and this seems clear when taken in connection with the language first quoted, i. e., “ If the appointment to the other office were made after the passage of the act, it might well be held to be void, leaving the person in- possession of the first office.”
On the other hand, it was held that if at the time of the passage of the act a person was holding two offices and annual compensation was attached to each, or a salary was attached to one and fees to the other, the person so holding would have the right of election between the two offices.
*428 In the present case the claimant was appointed to both offices subsequent to the passage of the act of 1894. His appointment to the office of civilian assistant to perform the duties of chief clerk was made while he was holding the office of notary public, and having accepted the office and enjoyed the annual salary of $2,500 attached thereto, the question is, Does the act of 1894 apply ? • ;
The claimant’s contention is that the act does not apply to two distinct offices. True, if two distinct offices were specially authorized by law to be held by the same' person, as in the act provided, then the compensation attached to both may be paid to the incumbent, but that is not this case.
The claimant’s further contention is that a notary public of the District of Columbia is not an officer of the Government within the meaning of the act of 1894, and further, that the fees of such notary are not compensation attached to an office, within the meaning of said act. But the answer to that is that notaries public in the District of 'Columbia are appointed by the President pursuant to an act of Congress, and their compensation is fixed by way of fees for specific services, such as are claimed to have been rendered' for the' Government in this case.
But if we should concede that the claimant could hold the office of notary public while holding the other office, and 'that the fees of a notary were not .compensation because not coming from the Treasury of the United States, ...still .in the present case the claimant would not be entitled to recover because of the inhibition contained in section 1763.
In administering the oaths for which compensation is here sought, the claimant was, without express authority of law, discharging the duties of another office than that for which he was paid $2,500 per annum. If a notary public appointed by the President in the District of Columbia is not an officer within the meaning of the act of 1894; as the claimant contends, then the provisions of section 1763 as well as of the'act of June 20, 1874 (supra), apply.
The evident purpose of the Congress by the act ofT894 was to remedy the mischief which was no’t cured by the previous legislation respecting dual compensation' of officers of *429 the Government; The previous legislation had been construed as not prohibiting the holding by the same person of two distinct offices, each with its own duties and compensation, and to that end the act of 1894 was passed, which in express terms prohibits the appointment to or the holding of an office by anyone who at the time holds an office with a-salary of $2,500 attached, unless specially authorized by law.
As was said in the case of Hoyt v. United States (supra), “ The prohibition is general, and applies to all public officers aftd quasi public officers who have a fixed compensation ” of $2,500 per annum, except as stated in the act. And we are not at liberty to add any othér exception. ' .
With the wisdom of the legislation we are not concerned, as that is for the Congress. Our office is to construe the laws they enact so as to give force and effect thereto for the guidance of the accounting officers in the settlement of claims against the United States; and that we have endeavored to do in the present case, and our conclusion is that when the claimant accepted the office of civilian assistant to the Bureau of Supplies and Accounts in the Navy Department, at the salary of $2,500 per annum, he thereby in law precluded him: self from receiving from the Government any compensation whatever for any services thereafter rendered as such notary to the Government, if, indeed, the acceptance of such office of civilian assistant did not of itself operate to vacate the office of notary public. The prohibition in the act of 1894 against the holding of two offices by the same person is to prevent the payment of dual compensation; that is to say, the compensation attached to two offices, if to one there is attached $2,500 per annum. Therefore, in respect to such dual compensation, the claimant can claim no better right for the services performed as a de facto than he could as a de jure notary public. Furthermore, the compensation annexed to a public office is incident to the title to the office and not to the exercise of the functions of such office. Whatever exception there may-be as to the right of a de facto officer to retain money received, or to recover compensation annexed to an’ office for exercising .the functions thereof, we are clear that the present *430 case falls within the well-known general rule that no recovery can be had for the discharge of the duties of an office by a de facto officer. ' " .
Nor will this ruling, if the office of notary public be considered as vacated, invalidate ’the acts of the claimant in administering the oaths he did to the Paymaster-General, for while the acts of a de facto officer are invalid as to him, they are valid and binding on the public. (Ball v. United States, 140 U. S., 118, 129; McDowell v. United States, 159 U. S., 596, and authorities there cited; Hooper v. Goodwin, 48 Me., 79; Hussey v. Smith, 99 U. S., 20-24; Phillips v. Payne, 92 U. S., 130-132.)
For the reasons we have given the petition must be dismissed.