# Reinstatement of a Federal Judge
# Following His Service in the Army

The reemployment provisions of the Selective Training and Service Act of 1940 are likely inapplicable to a federal judge.

If the Selective Training and Service Act of 1940 does not run to the benefit of federal judges, Judge William Clark has vacated his judicial office, under the circumstances presented here.

If the Selective Training and Service Act of 1940 does apply, then Judge Clark's resignation may be immaterial, and the prohibition in the Act of July 31, 1894 against holding a second office probably does not apply.

If Judge Clark's further judicial services are desired, he should be given a new appointment, subject to Senate confirmation.

December 19, 1945

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

This is in response to your request for my views concerning the alleged right of former Judge William Clark to continue as judge of the United States Circuit Court of Appeals for the Third Circuit.

## I.

My conclusions are as follows:

1. I seriously doubt that the reemployment provisions of the Selective Training and Service Act are applicable to a federal judge.

2. If the Act does not run to the benefit of federal judges, Judge Clark has vacated his judicial office, under the circumstances presented here.

3. If the Selective Training and Service Act does apply, then

(a) Judge Clark's resignation may be immaterial; and

(b) the statutory prohibition against holding a second office (Act of July 31, 1894) probably does not apply.

4. In any event, if Judge Clark's further judicial services are desired, he should be given a new appointment, subject to Senate confirmation.

## II.

There seems to be no doubt that Judge Clark tendered his resignation to the President and that the President accepted the resignation without any qualification.

(Attorney Stryker's memorandum entitled "Judge William Clark—Memorandum in the Matter of his Right to Continue as Judge of the Circuit Court of Appeals" will be referred to as the "Brief" or "Br.")

Judge William Clark was appointed judge of the Circuit Court of Appeals for the Third Circuit on June 25, 1938. On March 24, 1942, he was commissioned a Lieutenant Colonel in the Army of the United States (Br. 6b). Mr. Stryker states that, on that very day (March 24, 1942), Judge Clark called upon President Roosevelt and submitted a letter in which he pointed out that "he had entered the service of the armed forces" and, for that reason, he preferred to resign from the Third Circuit Court of Appeals. It is further stated that President Roosevelt declined to accept the resignation, threw it into the waste basket, and suggested that Judge Clark obtain a leave of absence while serving in the army (Br. 6b).

Judge Clark's letter to the President reads as follows:

> This letter submits my resignation as Circuit Judge of the United States Circuit Court of Appeals for the Third Circuit. I am doing this because I am today taking the oath of office as Lieutenant Colonel in the Army of the United States. I am reporting to the General Staff for duty and I hope will eventually be sent to some field or foreign post where I can be useful. I thought that my military experience might well justify more than a transfer from one desk to another. I have most enthusiastically followed your awareness of what we have been facing in the world and with you I agree that "business as usual" or "courts as usual" must not continue. As I have on occasion expressed myself to that effect, I have wanted to practice what I have been preaching.

> It would be hypocritical for me to pretend that I should not like to have you accede to the request of my colleagues that the Congressional precedent be followed and leave of absence be granted. I have been a judge now for eighteen years, most of my adult life. I love the work and to give it up even for a short time is a great sacrifice. Because of that, however, I feel I am too closely concerned to be able to say what should be done. For this reason, I feel I must leave the decision to you.

> God keep you in your task of leading us all to victory.

> Respectfully,

> /s/ William Clark

Two days later, according to the Brief (at 7), which would be March 26, 1942, President Roosevelt wrote the following letter to Judge Clerk:

> Since talking to your the other day, I have been advised that under the law your voluntary entry into the military service will not permit the retention of your commission as United States Circuit Judge.
>
> Under the circumstances, I must regretfully accept your resignation from the judicial post.
>
> With appreciation for your long and able service, and for the patriotism which has moved you to your present choice, I am
>
> Very sincerely yours,
>
> /s/ Franklin D. Roosevelt

(A copy of this letter appears in Department of Justice File 44-5-1-3 and bears a pencil notation reading "The President signed this 3-25 & said No Publicity.")

It is stated in the Brief that Judge Clark did not receive the President's letter until "some days later on the Pacific Coast" while waiting transportation to the South Pacific, but it appears that on April 2, 1942, Judge Clark wrote the following letter to President Roosevelt:

> In these times I hesitate to trouble you with anything personal. However, as we talked about the matter, I feel I should.
>
> Our friend Frances [Francis], seems to me to have unnecessarily complicated the matter of my resignation. As I said to you, I was unwilling to follow the selfish precedent of our Congressional friends and therefore feel I should submit my resignation as a judge. You very generously rejected it and I think I am safe in saying that action on your part met with universal approval.
>
> I try to be careful about the law, particularly when dealing with my President and Commander-in-Chief. I was quite familiar with the statute on which the Attorney General has advised you. It was intended to prevent the receipt of two salaries. Only by a strained construction can it be extending to what is known as "incompatible office holding." However, I was careful about even that strained construction and discovered that the Act (it is found, I believe, U.S.C.A., title 8, Section 65) is in process of amendment, the amending bill being H.R. 6676 introduced March 11th and made retroactive to December 7, 1941. It would, therefore, be rather foolish to

have me declared ineligible pending the passage of the bill which would make me perfectly eligible.

Due to your kindness I am going to a far distant post and imagine I will be there for such length of time that I should have to insist on resigning in any event. It is my suggestion, however, that your recent letter might well be withdrawn pending a clarification of the legal situation. As I say, I think I shall have to resign in any event but I should be very reluctant to be forced out, so to speak, on the doubtful interpretation of a statute.

My address from Saturday until probably Wednesday will be the Fairmont Hotel, San Francisco, where I could be reached by telegraph from General Watson, or in any other way.

In conclusion, again thanking you for all your kindness, and be sure that I follow you with my usual affection and admiration.

Yours sincerely,

/s/ William Clark

Thereafter, Judge Clark received a telegram from the President, which did not reach Judge Clark "until some months later, after he arrived in Australia" (Br. 8).

The telegram read (Br. 8):

Your letter of April second received. In view of the doubt which HR 6766 is intended to remove I think the wisest thing to do is to let your resignation stand.

### III.

### A.

***It is very doubtful that the reemployment provisions of the Selective Training and Service Act of 1940, as amended, and related statutes, are applicable to a person holding the office of United States judge.***

Judge Clark's claim of right to "reemployment" as a judge rests almost wholly upon the Selective Training and Service Act of 1940 and related statutes. Section 8 of the Selective Training and Service Act of 1940 provides in pertinent part:

> (b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—
>
>> (A) if such position was in the employ of the United States Government, its Territories or possessions, or the District of Columbia, such person shall be restored to such position or to a position of like seniority, status, and pay. . . .

Pub. L. No. 76-783, 54 Stat. 885, 890, *as amended by* Pub. L. No. 78-473, 58 Stat. 798 (1944).

The above reemployment benefits have been extended to all persons who voluntarily enter active service in the land or naval forces subsequent to May 1, 1940. Service Extension Act of 1941, Pub. L. No. 77-213, § 7, 55 Stat. 626, 627 (codified as amended at 50 U.S.C. app. § 357 (1940 Supp. IV)). Judge Clark entered the army voluntarily. The date of his discharge is not given, but it is stated that he received a certificate of satisfactory completion of training and service and that on or about August 13, 1945, he applied to the Attorney General for "reemployment" as a judge of the Circuit Court of Appeals. It is further stated that this application was made within ninety days after Judge Clark was released from training and service in the army (Br. 1–2).

It is extremely doubtful, in my opinion, that the reemployment provisions of the Selective Training and Service Act do, or can be properly held to, apply to the office of federal judge.

The reemployment provisions apply "if such *position* was in the *employ* of the United States Government" (emphasis supplied). Certainly, this phrase does not unambiguously include the office of federal judge. For some purposes, at least, a constitutional office holder may not be deemed an employee or his office a position. That the Act itself in various provisions distinguishes between "office," "position," and "employee" is not without significance in this connection. Thus, section 5(c)(1) of the Act provides for the deferment of persons holding certain offices. Section 5(c)(2) authorizes the President to provide for the deferment of any person holding an "office" under the United States or a state, territory, or the District of Columbia. Section 5(e) authorizes the President to provide for the deferment of persons in "employment in industry, agriculture, or other occupations or employment." *See also id.* §§ 10(a)(2) (disallowing deferment of an "officer, member, agent, or employee of the Selective Service System" by reason of that

status), 10(a)(3) (authorizing appointment by the Director of the Selective Service System of "officers, agents, and employees"; authorizing "any officer or employee of any department or agency of the United States"—or any person "assigned or detailed to any office or position," except on local boards—to carry out the provisions of the Act).

Moreover, the policy of the Act does not require an interpretation that the statutory phrase be held to cover the office of federal judge. Clearly, there was no intention to encourage federal judges to enter military service. On the contrary, it was probably contemplated that they should not join the armed forces, since section 5(c)(1) of the Act provided that they "*shall*, while holding such offices, be deferred" (emphasis supplied).

The policy considerations which led to the exemption of federal judges from training and service under the Act also lead to the conclusion that they are not covered by its reemployment provisions. In time of war, it is even more important than in time of peace that the normal functions of government be discharged efficiently. If judges were permitted to enter into active service in the armed forces without permanently vacating their offices, the normal functions of government would suffer. There is no authority for the appointment of an "acting" judge to substitute for another judge during the period of his military service. It must be assumed that the number of judges authorized for the Circuit Court of Appeals for the Third Circuit is necessary to carry on the duties of the court. There being no authority to appoint a temporary substitute, the work of the court would undoubtedly fall in arrears and be impeded by the extended absence of Judge Clark for more than three years. It is hardly to be supposed that the Selective Training and Service Act was intended to bring about such a result.

It is necessary to exclude the office of federal judge from the reemployment provisions of the Act, also, in order to avoid a serious constitutional question. It has been concluded that Judge Clark vacated his judicial office when he entered the army. Where an office has been vacated, the former incumbent can be restored to it only by a new appointment. Federal judges can be appointed only by the President with the advice and consent of the Senate (U.S. Const. art. II, § 2, cl. 2). Congress itself not only lacks power to appoint such officers of the United States, it also lacks power to prescribe qualifications for office which "so limit selection and so trench upon executive choice as to be in effect legislative designation." *Myers v. United States*, 272 U.S. 52, 128 (1926). Hence, when an office has been vacated, Congress lacks power to restore to office the former incumbent.

It may be noted that the President, with the advice and consent of the Senate, appointed another judge *vice* Judge Clark. The President and Senate appear to have assumed that Judge Clark would not be automatically restored to judicial office upon completion of his military service, since it is hardly likely that they would have assumed that there would necessarily be another vacancy which Clark could fill upon returning to civilian life. The action of the President and Senate

constitutes a practical construction which should be given considerable weight in this connection. The practice of the Department is also pertinent. This Office has heretofore concluded that the reemployment provisions of the Act do not apply to United States Attorneys who are commissioned by the President for a term of four years. (Dep't of Justice File No. 44-5-1-3, § 2.) The reasons underlying the decision with respect to United States Attorneys apply *a fortiori* to federal judges.

Considering all the provisions of the Selective Training and Service Act, in the light of the foregoing considerations, it seems extremely doubtful that the reemployment provisions are applicable to the office of federal judge.

## B.

### *If the Selective Training and Service Act does not run to the benefit of Federal judges, Judge Clark has vacated his judicial office, under the circumstances presented here.*

### 1.

### *The evidence shows that Judge Clark's resignation was validly accepted. The acceptance of the resignation vacated the judicial office.*

When, on March 24, 1942, the subject was first brought to the attention of the President, it is said that he declined to accept Judge Clark's proffered resignation and insisted that Judge Clark should obtain a leave of absence. This situation was radically changed when the President did in fact, two days later, accept Judge Clark's resignation. The evidence from here on is all in writing, which is plain and unambiguous. The President's letter of March 26, 1942, to Judge Clark states unequivocally, "I must regretfully accept your resignation from your judicial post." There can be no doubt as to the President's intention to accept the resignation. This intention is emphasized by the concluding paragraph of the letter, which expresses appreciation of the Judge's long and able service.

It does not seem to be material whether or not the President acted "under a mistaken notion," as contended by Mr. Stryker, that Judge Clark's "voluntary entry into the military service" would not permit the retention of his commission as United States Circuit Judge. Even if it be presumed, solely for purposes of argument, that the President misapprehended the law or that that he was incorrectly advised, the resignation became effective when it was accepted, unless the acceptance was later retracted or withdrawn by the President.

There is no evidence that the President subsequently took any action to change the legal effect of his acceptance of Judge Clark resignation. On the contrary, the President's telegram to Judge Clark shows clearly that he did not intend to set aside the resignation or to change the situation created by the resignation and its

acceptance. The telegram to Judge Clark stated in part: "I think the wisest thing to do is to let your resignation stand."

Although the President's telegram is cast in language which might suggest that Judge Clark had the power to take some action with respect to his resignation which had already been accepted, there is no doubt that, in the absence of a court decision on the issue, only the President could set aside his own action in accepting the resignation. Since the President did not take any action to change, or suggest any change in, the legal status created by his acceptance of the resignation, it was not necessary, as suggested (Br. 8), that there should be any "concurrence or acquiescence" by Judge Clark in the President's telegram. It is contended that the President, on March 24, rejected the offer to resign, that this revoked the offer, and that thereafter when the President purported to accept, there was no offer pending (Br. 9). However, even if it be assumed that the President declined the offer at first, the evidence set forth above indicates that the parties deemed Judge Clark's resignation to be still pending, when it was accepted.

It seems clear that Judge Clark resigned and that the resignation was accepted by the President. The acceptance of the resignation vacated the judicial office.

## 2.

***Under the Act of July 31, 1894 (5 U.S.C. § 62), there is a real question whether Judge Clark did not, by acceptance of a commission in the army, vacate his judicial office. The cases of Mr. Justice Murphy, Judge Marvin Jones and Judge Collett are distinguishable.***

Mr. Stryker argues that no federal statute works a forfeiture of a judicial office by reason of a judge's acceptance of a commission in the armed forces; and that the provisions in 5 U.S.C. § 62 (1940) are limited to the executive department, and hence are not applicable to federal judges.

I think there is a real question whether, by virtue of 5 U.S.C. § 62, Judge Clark did not, by accepting the commission in the army, vacate his judicial office. In any event, double office-holding of the present type is in my opinion made unlawful by the statute.

The provisions of 5 U.S.C. § 62 are derived from section 2 of the Act of July 31, 1894, which provides in pertinent part:

> No person who holds an office the salary or annual compensation attached to which amounts to the sum of two thousand five hundred dollars shall be appointed to or hold any other office to which compensation is attached unless . . . specially authorized thereto by law . . . .

*Id.* ch. 174, § 2, 28 Stat. 162, 205.

It will be noted that there is nothing in the provisions of section 2 of the Act of July 31, 1894 (5 U.S.C. § 62) that would limit its application to the executive department or to any one of the three branches of the federal government. In fact, the Act of July 31, 1894 was a legislative, executive, and judicial appropriation act, and the history of section 2 of that act suggests no intention to limit its application to particular officers. S. Rep. No. 53-506 (1894); 26 Cong. Rec. 7423, 7844, 7855 (1894).

The Revised Statutes of 1878 (2d ed.), which antedated the Act of July 31, 1894, were divided into titles, arranged according to the subjects treated, in the same general manner in which the United States Code is divided. Title IV of the Revised Statutes was entitled "Provisions Applicable to All the Executive Departments." 18 Stat. pt. 1, at 26 (repl. vol.). Title XIX of the Revised Statutes was entitled "Provisions Applicable to Several Classes of Officer." *Id.* at 312. Since the Act of July 31, 1894 came after the promulgation of the Revised Statutes, it could not be allocated to its proper place in the Revised Statutes. It is significant, however, that Gould and Tucker, in their Notes on the Revised Statutes of the United States, which are arranged according to the subdivisions of the Revised Statutes, place section 2 of the Act of July 31, 1894 in title XIX, "Provisions Applicable to Several Classes of Officers." John M. Gould & George F. Tucker, *Supplement to Notes on the Revised Statutes of the United States* 160 (1898).

Section 158 of the Revised Statutes (title IV, 2d ed. 1878) provides that "[t]he provisions of this Title shall apply to the following Executive Departments," naming the departments then in existence. 18 Stat. pt. 1, at 26 (repl. vol.). This section, with amendments bringing within its terms executive departments later established, is now 5 U.S.C. § 1 (1940). Section 2 of the Act of July 31, 1894 is now 5 U.S.C. § 62. In view of the history of the Act of July 31, 1894, to which I have referred, its inclusion by the codifiers in title V of the United States Code is by no means conclusive or even persuasive of the fact that the statute was intended to apply only to the executive departments.

Further support for this view is found in the actions of the Attorney General and the courts. Thus, Attorney General Griggs, in an opinion dated August 18, 1898, discussed at length the application of the Act of July 31, 1894 to Circuit Judge William L. Putnam, in connection with the latter's appointment as commissioner under a convention with Great Britain relating to the seizure of vessels in the Bering Sea. *Office—Compensation*, 22 Op. Att'y. Gen. 184 (1898). The Attorney General held that the position of commissioner was not an office within the contemplation of the Act of July 31, 1894, but the whole discussion clearly shows that the Attorney General considered the statute to be applicable to judges. *United States v. Harsha*, 172 U.S. 567 (1899), involved one person holding two positions as clerk or other officer of the courts. The opinion of the Supreme Court shows that while under the facts in the case the Act of July 31, 1894 was not

applicable, the Court, nevertheless, considered the statute to be applicable to court officials.

I come now to consider the application of section 2 of the Act of July 31, 1894, to Judge Clark. As a judge of the Circuit Court of Appeals he held an office to which was attached a salary or annual compensation amounting to $2500. No citation is needed to support the statement that the office of Lieutenant Colonel in the Army of the United States is an "office" within the meaning of the 1894 statute. Statutory compensation is attached to the office of Lieutenant Colonel. Assuming that the Selective Training and Service Act is not applicable, no other statute authorizes a federal judge to be "appointed to or hold" the office of Lieutenant Colonel. Thus, on its face, the Act of July 31, 1894, seems to apply in Judge Clark's case.

It must be admitted, however, that the statute has not been authoritatively construed, and, in view of the tenure federal judges have under the Constitution (art. III, § 1), there is a question whether, by virtue of section 2 of the Act of July 31, 1894, a judge can be held to have vacated his judicial office by accepting a military commission, where his ascertained intent is to continue holding his judicial office.

It has been generally held, and I think rightly, that the statute does not apply in cases where no statutory compensation is attached to the second office. Thus, the statute is not applicable to Judge Marvin Jones and Judge Collett (Br. 6a). Judge Jones served as Food Administrator and Judge Collett is now serving as Economic Stabilizer. Both of these positions were created by executive order. Even if they were "offices" within the meaning of the Act of July 31, 1894, no statutory compensation is attached to either office and, therefore, the statute did not bar the holding by Judge Jones and by Judge Collett of the respective offices mentioned. There are precedents to support the action of judges serving on or in connection with international tribunals. Two recent examples are Mr. Justice Jackson and Judge Parker. Even if the international positions which they hold should be "offices," no statutory compensation has been attached by Congress to these "offices."

Mr. Stryker states that Mr. Justice Frank Murphy of the United States Supreme Court "served in the army" for three months during the summer of 1942. This statement is believed to be in error. It was first reported by the press about June 11, 1942, that Mr. Justice Murphy would accept a commission in the army. This report was later denied and it was subsequently reported that Mr. Justice Murphy was not commissioned in the army and did not serve in the army in any capacity, but that during the 1942 summer recess of the Supreme Court he spent some time as an observer or in some unofficial capacity with the army in the United States.

It will be recalled that, when it was desired to appoint as Secretary of Commerce Mr. Jesse Jones, who then held the office of Federal Loan Administrator,

the Congress passed a special statute authorizing Mr. Jones to hold both offices, his compensation being limited to that provided by law for the Secretary of Commerce. Act of Sept. 13, 1940, ch. 719, 54 Stat. 885.

Attorney General Sargent construed the Act of July 31, 1894 as being *in pari materia* with other statutes designed to prevent double salaries and as not prohibiting performance without additional compensation of the duties of two offices, one of which does not carry a statutory salary. *Holding Two Offices—Chief of Bureau of Efficiency*, 34 Op. Att'y Gen. 490 (1925).

On the other hand, the Supreme Court in *Harsha* (a case involving a person who at the time of the passage of the Act of July 31, 1894, was holding two offices) observed with respect to this statute that "[i]f the appointment to the other office were made after the passage of the act, it might well be held to be void, leaving the person in possession of the first office." 172 U.S. at 572. In *Pack v. United States*, 41 Ct. Cl. 414, 429 (1906), the court in a dictum indicated that "acceptance of" the second office might "of itself operate" to vacate the first office. In *Double Compensation*, 24 Comp. Dec. 604 (1918), it was held that acceptance of a second office incompatible with the first one vacated the first office. *Accord Civilian Employees Ordered to Active Military Duty—Leaves Of Absence*, 20 Comp. Gen. 158 (1940).

Since statutory compensation or salary is attached to the office of Lieutenant Colonel in the Army of the United States, Judge Clark could not waive or decline to accept such military compensation or salary and at the same time hold the military office. *Glavey v. United States*, 182 U.S. 595 (1901). *See also United States v. Andrews*, 240 U.S. 90 (1916); *MacMath v. United States*, 248 U.S. 151 (1918); *Bancroft v. United States*, 56 Ct. Cl. 218 (1921), *aff'd*, 260 U.S. 706 (1922) (per curiam). Attorney General Wickersham, after advising the Secretary of the Interior that a retired army officer might be appointed superintendent of an Indian school without additional compensation, the salary of which position had not been fixed by the Congress, said:

> Of course, I do not mean by anything I have said herein to intimate that persons may be appointed without compensation to any position to which Congress has by law attached compensation. [*Glavey v. United States*, 182 U.S. 595 (1901); *Miller v. United States*, 103 F. 413 (1900).] The position of superintendent of Indian schools, however, is one of those appropriated for in general lump sums [Pub. L. No. 62-335, 37 Stat. 518 (1912); Pub. L. No. 60-104, 35 Stat. 70, 73 (1908); Pub. L. No. 59-154, 34 Stat. 1015, 1020 (1907)] and to which, therefore, persons may be appointed either without compensation or with any compensation short of the maximum.

*Employment of Retired Army Officer as Superintendent of Indian School*, 30 Op. Att'y Gen. 51, 56 (1913).

I do not discuss the Act of May 10, 1916 (Pub. L. No. 64-73, § 6, 39 Stat. 66, 120 (codified as amended at 5 U.S.C. § 58 (1940))), since this statute is aimed only at receipt of double salaries or compensation, and since that question is not material to a question whether one person may hold two separate offices, to each of which statutory compensation is attached.

There appears, therefore, to be a real question whether under the Act of July 31, 1894, the acceptance by Judge Clark of the military commission and acceptance of compensation or salary attached to the military office, together with the performance of active military duties for an extended period, did not vacate his office of judge of the Circuit Court of Appeals.

### 3.

### *Under common law a public officer may not hold two incompatible offices, and acceptance of the second office vacates the first.*

This rule, which is discussed at length in a note appearing in 1917A L.R.A. 216 (1917) ("Incompatibility of offices at common law"), may provide a useful guide to the construction of the statutes here involved. The question is further discussed in a note in 26 A.L.R. 142 (1923), entitled "Incompatibility of offices or positions in the military, and in the civil service," with citations of court decisions and authorities.

Attention is invited to *Lopez v. Martorell*, 59 F.2d 176 (1st Cir. 1932); *Montes v. Sancho*, 82 F.2d 25 (1st Cir. 1936); *Howard v. Harrington*, 96 A. 769 (Me. 1916); *Crosthwaite v. United States*, 30 Ct. Cl. 300 (1895), *rev'd*, *United States v. Crosthwaite*, 168 U.S. 375 (1897). *See also* Floyd Russell Mechem, *A Treatise on the Law of Public Offices and Officers* bk. II, §§ 419–431, at 267–75 (1890).

Rulings of the Attorney General holding that certain offices named are not incompatible are found in *District of Columbia—Naval Militia—Office*, 22 Op. Att'y Gen. 237 (1898), and *Holding Two Offices—Chief of Bureau of Efficiency*, 34 Op. Att'y Gen. 490 (1925).

It seems to be the general rule at common law that two offices are incompatible when their functions or duties are inconsistent or when they conflict with one another. Almost all state constitutions have provisions prohibiting state officials from holding an office of trust or profit under the United States. Prior to World War II, these provisions seem to have been strictly construed by the state courts. The reverse seems to be true with respect to decisions of the state courts involving state officers who have entered the armed forces of the United States. As stated in the note in the George Washington Law Review,

> Prior to the present war, there were many decisions—indeed, the weight of authority—finding forfeiture of state office, based upon a strict interpretation of the state constitutional provision. . . . However, since the beginning of the present war, the majority of opinions have held against forfeiture of state office even though the incumbent has become an officer of the United States.

*The Serviceman's Right to Retain His State Office*, 13 Geo. Wash. L. Rev. 453, 463 (1944–45) (footnotes omitted).

Most of the state court cases are collected in the above note in the George Washington Law Review and in a note in the Virginia Law Review, *Constitutional Law—Incompatibility of Offices—State Judge Called into Federal Service with National Guard Does Not Thereby Vacate His Judgeship*, 29 Va. L. Rev. 501 (1943). With respect to the state court cases, the writer of the latter note observes: "It would seem, therefore, that the courts prefer to do violence to the letter of a constitution rather than to penalize a person for his patriotism." *Id.* at 502.

In some states there are statutes authorizing the duties of an absent office holder to be performed by a substitute. This was true in two of the four cases cited in Mr. Stryker's brief (at 12–14). In *State ex rel McGaughey v. Grayston*, 163 S.W.2d 335 (Mo. 1942), a circuit judge was called into active service as a colonel in the National Guard. In discussing questions of incompatibility between the two offices, the court observed: "If the law did not permit a substitute to carry on the duties of the [judicial] office in his absence[,] a different question might be presented." *Id.* at 341. Likewise, in *Caudel v. Prewitt*, 178 S.W.2d 22 (Ky. 1944), the views of the court on the question whether the duties of the Commonwealth's attorney and those of an officer in the Officers' Reserve Corps on active duty are incompatible seem to have been considerably influenced by the fact that there was authority to appoint a substitute to perform the duties of the office of the Commonwealth's attorney during his absence in military service.

The question of incompatibility, alone, does not appear to be the basis for many state court decisions involving military personnel in World War II. Most of the cases seem to turn on constitutional and statutory provisions. However, in *Perkins v. Manning*, 122 P.2d 857 (Ariz. 1942), there was no disability under the Arizona constitution, but nevertheless, the court held that the office of Major in the National Guard on active duty with the army was incompatible with that of Superintendent of Health.

Under the circumstances of Judge Clark's absence from the bench for more than three years, part of the time outside of the United States, with no authority for the President or anyone to designate a substitute judge, it could be argued that his judicial and military positions were incompatible. However, in the light of the above discussion the contrary could also be argued. In this connection, the cases of Judge Collett, et al., should be borne in mind.

## C.

### 1.

### *If the Selective Training and Service Act does apply, then Judge Clark's resignation may be immaterial.*

The evidence shows that before Judge Clark tendered his resignation to the President, he had already entered the armed forces and been commissioned a Lieutenant Colonel in the Army of the United States (Br. 6b). Thus, it appears that Judge Clark left his position or office to perform training and service in the armed forces. Vacating his judicial office seems to bear more on the question of whether by so doing he intended to waive reemployment rights rather than on the question of whether or not he left his civil position to enter the armed forces. Assuming the Selective Training and Service Act to be applicable, I am inclined to believe that under the circumstances of this case, the court would be loathe to hold that the resignation in itself is a bar to reemployment under the statute. Where the statute applies it provides that a person who has been restored to his position "shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces" (*id.* § 8(c)). The regulations of the Selective Service System also take this view of the statute, it being stated that "the fact that a veteran signed a 'quit slip' or 'resignation' at the time of leaving his employment for entrance into the armed forces does not operate to defeat the legal right of reinstatement" (Br. 9).

### 2.

### *The statutory prohibition against holding a second office (Act of July 31, 1894) probably does not apply.*

The Act of July 31, 1894, quoted in the preceding section, is designed to prevent one person from holding two lucrative offices. Even if it be assumed that the statute is applicable, it would not bar granting a furlough or military leave from a civil office to enable the incumbent of the office to perform training and service, as required under the Selective Training and Service Act. This requirement is expressly stated in the Selective Training and Service Act. I conclude, therefore, that if the Selective Training and Service Act does apply to Judge Clark, the Act of July 31, 1894, probably would not prohibit him from holding the military office and the judicial office at the same time.

## D.

### *If Judge Clark's further judicial services are desired, he should be given a new appointment subject to Senate confirmation.*

The evidence shows that President Roosevelt accepted unconditionally Judge Clark's resignation from his judicial office. If the Selective Training and Service Act is not applicable to Judge Clark, President Truman would not have power to restore Judge Clark to the judicial office, except by making a new appointment, subject to Senate confirmation. In view of the grave doubt as to the application of the Selective Training and Service Act, and the serious consequences as to other constitutional officers that would follow if Judge Clark should be restored to office under authority of the Selective Training and Service Act, the safest course seems to be for the President to make a new nomination and appointment subject to confirmation by the Senate, if it should be decided that Judge Clark's further service on the bench is wanted.[*]

HAROLD W. JUDSON
*Assistant Solicitor General*

---

[*] Editor's Note: Judge Clark was not nominated again to the Third Circuit. In 1949, he was appointed Chief Justice of the Allied High Commission Court of Appeals in Nuremberg, Germany, and served in that capacity until 1954.