[Civil No. 4478.   Filed March 2, 1942.]

[122 Pac. (2d) 857.]

F. P. PERKINS, Plaintiff, v. G. F. MANNING, Superintendent of Public Health of the State of Arizona, Defendant.

Mr. Matt S. Walton, for Plaintiff.

Mr. Joe Conway, Attorney General, and Mr. W. E. Polley, Assistant Attorney General, for Defendant.

LOCKWOOD, C. J.—F. P. Perkins, petitioner, applied for an original writ of *mandamus* in this court

directing G. F. Manning, as superintendent of health of the State of Arizona, respondent, to approve certain salary claims of petitioner against the state.

A stipulation of facts was filed, which shows substantially as follows: Petitioner was appointed by the Honorable R. T. Jones, then governor of Arizona, as superintendent of health for a term of two years, beginning the first Tuesday in April, 1940. He took office on that date and performed the duties thereof until September 25, 1940. In June, 1930, he had been appointed major in the National Guard of Arizona, and made regimental surgeon of the 158th Infantry, and continuously held such position up to said September 25. On that date the National Guard of Arizona was ordered by the President of the United States to active duty, and he left with his regiment for an army camp outside Arizona. Just prior to leaving the state he secured a ninety days leave of absence from the governor. Two days before the leave expired, he returned to Phoenix and to his office in that city and remained there for a week, at the expiration of which time he secured another ninety days leave of absence and returned to the army camp. A few days before that leave of absence expired he again returned to Phoenix and again remained in his office for a week, when he returned to the army camp, remaining there until the 16th day of June, 1941.

The legislature of Arizona, at its regular session in the spring of 1941, enacted a law (chapter 105, Session Laws of 1941) which, in effect, abolished petitioner's office, effective June 16, 1941.

Before leaving the state on each of the absences above referred to, petitioner had conferences with the heads of the several departments under his jurisdiction, and instructed them as to the manner of carrying out his policies as superintendent, and performing their duties, and from time to time, while absent, gave

them additional instructions by correspondence. He also performed a certain amount of the work of his office by correspondence and signed many official documents sent to him in camp. Once, during this period, he went to Washington as superintendent of the board of health, at the request of the surgeon general of the United States. During all of this period he received from the United States the customary compensation paid officers of his rank in the army, and remained in the military service as aforesaid, and at the filing of his petition was still in said service. He gives as his reason for attempting to retain his position in both offices that the original call for induction into the army was indefinite as to term, and that he was at the time fifty-nine years of age, and uncertain whether he could pass the physical examination necessary to retain his military rank and position, or, if he did pass, whether he would continue physically fit for the service. It is upon this statement of facts that we are requested to determine whether it is the duty of respondent to approve the salary claims of petitioner as superintendent of health of the state of Arizona from September 25, 1940, to June 16, 1941.

Respondent raises two questions of procedure, the first being that the petition does not allege there was money in the state treasury available to pay petitioner's claim, and the second, that the petition shows on its face that it is barred by the statute of limitations, section 12–714, Arizona Code 1939, which provides, in effect, that suits for salary claims against the state must be filed within ninety days after such accrual. This proceeding was not commenced until December 2, 1941, and the last salary claim, if due at all, was due and payable on June 16.

So far as there being no money in the treasury is concerned, if this were an action to compel the auditor to issue a warrant it would be a good defense,

but we think it unnecessary for a claimant to allege in his claim that the funds are on hand to pay it.

■■ If it were not for one thing, the plea of the statute of limitations would be well taken. The Soldiers' and Sailors' Civil Relief Act of 1940, Public No. 861, 76th Congress, section 205, 50 U. S. C. A. Appendix § 525, provides that the period spent in military service by a plaintiff in an action shall not be included in any period during which the statute of limitations runs. This statute has always been held a valid exercise of power by the federal government. Since during all of the period involved in this controversy, and up to the present time, petitioner has been in the military service of the United States, his claim is not barred by the statute.

■ It is urged the stipulation of facts is insufficient for us to determine the case on the merits, and it should, therefore, be dismissed. If a stipulation of facts is not sufficient for us to determine a case on its merits, our usual custom, in original proceedings in *mandamus,* is not to dismiss it but to remand it to some superior court to find the facts and to return the case, together with the findings, to us for a final determination. We think, however, the stipulation of facts in this case is sufficient for us to pass on the merits without the necessity of further findings by a trial court.

The real question in issue is whether (a) petitioner, by his induction into the military service of the United States on September 25, 1940, accepted an office incompatible with that of superintendent of health of the state of Arizona, or (b) did his office become vacant ·by reason of the following provision of section 12–404, Arizona Code 1939:

"*Vacancy by law.*—An office shall be deemed vacant from and after the happening of either of the following events before the expiration of the term: . . . his

ceasing to discharge the duties of his office for the period of three (3) consecutive months, except when prevented by sickness, or when absent from the state by permission of the legislature; . . . ''

██ The doctrine of the incompatibility of public offices is a part of the common law and of great antiquity. Its correctness and propriety are so well established as to be assumed without discussion in practically every case which has arisen upon the subject. The question, however, is what constitutes incompatibility. Without citing and discussing the many cases upon the subject, we think they are practically unanimous in basing the doctrine on public policy. But the full scope of what public policy requires and the content of a general rule which will in all cases determine whether any two particular offices are compatible, has rarely, if ever, been determined by any court. The great majority of the reported cases take a somewhat narrow view of the question and determine the incompatibility by the duties of the respective offices rather than by the power of the incumbent to perform such duties. Following this principle, it is very frequently held that the only test is whether one office is subordinate to the other or has the power or duty of reviewing or regulating the conduct of the other. For example, it is held that the offices of mayor and alderman are incompatible when the mayor has a veto over the action of the alderman, and that the office of an auditor is incompatible with that of an office whose accounts he must audit. A minority of the cases, however, while accepting this as one test of incompatibility, also consider the offices incompatible when, by their very nature, it will be a physical impossibility for any person properly to perform the duties of both offices. This rule is laid down in perhaps its clearest form in *State* v. *Buttz,* 9 S. C. 156, 9 South Carolina Reports 70. Therein the two offices

which were contended to be incompatible were that of solicitor of the first judicial circuit of South Carolina and representative in Congress. The court said:

" . . . What, then, does constitute incompatibility in offices? In 5 Bac. Abr., Title Offices, K, we find the rule laid down, upon the authority of Lord Coke, in these words: 'Offices are said to be incompatible and inconsistent, so as to be executed by the same person, when, *from the multiplicity of business in them, they cannot be executed with care and ability;* or when their being subordinate and interfering with each other it induces a presumption they cannot be executed with impartiality and honesty.' And in Dillon on Municipal Corporations, in a note to Section 166, it is said that 'incompatibility in offices exists where the nature and duties of the two offices are such as to render it improper, from considerations of public policy, for one incumbent to retain both.' Apply either one of these definitions to the case in hand and it is very manifest that the two offices in question are wholly incompatible. It certainly needs no argument to show that 'the multiplicity of business' in each of these offices is such as to render it not only impossible for the same person to perform the duties of both 'with care and ability,' but impossible often, and very often too, to perform them at all. It is equally certain that the nature and duties of these two offices are such as that every consideration of public policy renders it improper for one incumbent to retain them both, and it is none the less certain that the duties of the two offices are such that the performance of the duties of the one necessarily involves the neglect of the duties of the other. . . . " (Italics ours.)

And it was held that the two offices were incompatible.

In the case of *Taylor* v. *Commonwealth,* 3 J. J. Marsh., Ky., 401, the court, without discussing the reason, said:

"We will observe only, that the situation of paymaster of the United States army is an office; and that that of clerk of a county court, is likewise an office. They are, of course, incompatible; and, therefore, the

acceptance of the former would, *ipso facto,* vacate the latter.''

The case, however, most closely analogous in facts to the one at bar is *State ex rel. Cornwell* v. *Allen,* 21 Ind. 516, 83 Am. Dec. 367. There the defendant had been duly chosen as auditor of Vigo county. During his term of office he entered the United States army and remained therein until the next general election. A question arose as to whether he had vacated his office by entering the army, and the court said:

''Now, whenever the auditor voluntarily permanently disables himself to perform the duties of his office he, by that act, constructively resigns the office by abandonment of it. A temporary disability to discharge the duties of the office might not, of itself, create a vacancy. In an office, capable of being served by deputy, the deputy of the principal might, doubtless, continue to act during the temporary disability of the principal; and, if no deputy had been appointed, perhaps the sureties of the principal might appoint. [Citing case.] But a disability designed to continue for the whole term of office must vacate the office. And the question now arises, did the auditor, in this case, by enlisting as a private soldier, in the army of the United States for three years, or during the existing war, thus disable himself? Of this we have no doubt. What did he undertake, what did he agree to do, by that enlistment? In what situation did he place himself? He placed himself in the service of the government of the United States, and agreed, yes, legally bound himself, to leave, not only the county of Vigo, but the State of Indiana, and remain absent, if required, for three years, devoting his entire time to the service of the United States in parts remote from the State of Indiana. This, we judicially know, because we know that the government was not enlisting soldiers to serve in Vigo county, nor in the State of Indiana; for there was no rebellion existing within those limits to be put down by an army. Allen not only undertook to leave the State, and did leave it, but he further deprived himself of the power to return,

of his own volition, for a period of three years. The soldiers, as we judicially know, were enlisted for the war which was being carried on in the Southern States; and while we concede the nobleness and patriotism of the spirit which prompted the defendant to enlist, still, we can not allow such considerations to control in the decision of a question of law. . . . ''

The case chiefly relied upon by petitioner is that of *Bryan* v. *Cattell,* 15 Iowa 538. Therein plaintiff had been elected district attorney, and during his term entered the federal army and remained therein until January, 1863. In April, 1862, the governor of Iowa, believing that plaintiff had vacated the office of district attorney by accepting an incompatible one in the service of the federal government, appointed a successor. Plaintiff sued for salary which he claimed was due him as district attorney after the action of the governor as aforesaid, and the question of incompatible offices arose. The court said:

''But what is meant by incompatible? Does it cover every case where the incumbent places himself in such a position that he cannot, for the time being, discharge the duties of the first office? Or does it embrace those cases where the nature of the duties of the two offices are such as to render it improper, from considerations of public policy, for him to retain both? . . . ''

and held:

'' . . . that incompatibility, as here used, must be such as arises from the nature of the duties, in view of the relation of the two officers to each other, seems to have its foundation in reason. . . . ''

and the offices were held to be compatible.

We have thus, on an almost identical state of facts, two appellate courts taking opposite views as to the law. While the decided weight of authority supports the conclusion of the Supreme Court of Iowa, we think the rule laid down by it takes too narrow a view of the requirements of public policy. If it be correct,

then it would be entirely possible for the governor of Arizona at the same time to be governor, United States Senator and mayor of Phoenix, for the duties of the different positions are in no way in conflict, in the sense referred to by the majority rule, yet it is obvious that it would be a physical impossibility for one person properly to perform the duties of all three positions. And we are sure it would shock the common sense of the ordinary man to hold that all of these positions were compatible and could be held at the same time by one individual.

■■ We think that public policy requires that anyone accepting and retaining a public office should not place himself, by the accepting of another office, in such a position that it is physically impossible for him properly to perform the duties of both offices, and if the nature of the two offices is such that this impossibility does appear, the offices are incompatible and the acceptance of the second office, *ipso facto,* vacates the first. Applying that rule, is it possible that petitioner can properly perform the duties of major in the United States army and of superintendent of public health in the state of Arizona? We think it is obvious that he cannot. As was said in *State* v. *Buttz, supra,* "Here are two offices held under two distinct governments; the duties of the one are to be performed in Washington, while those of the other are to be performed in this State." In the present case, petitioner's duties as a major in the United States army not only called him out of the state of Arizona, but may call him out of the United States itself, while the great majority of his duties as superintendent of public health must be performed within the state.

That petitioner recognized the physical incompatibility of the offices is shown by the fact that he deemed it necessary to secure a leave of absence from the army and to return to the state at frequent intervals

in order to perform even part of his duties. But this leave of absence was only a matter of grace on the part of the army authorities, and might have been denied him at any time. In fact, in his brief he practically admits that if it had been his intention to remain permanently in the army, the two positions would have been incompatible, but he offers as an excuse that his reason for attempting to hold both positions, and incidentally, to draw the salary therefrom, was the uncertainty of his tenure with the army. While we understand his conduct and his reasons therefor, we think they do not alter the legal situation.

We hold, therefore, that the doctrine of incompatibility of offices depends upon the public policy of the state; that offices are incompatible not only when the duties thereof are in conflict, but when it is physically impossible that they may be performed properly by the same person; that on the facts as shown it was physically impossible for petitioner to perform properly the duties of the two offices which he attempted to retain, and that his acceptance of the duties and emoluments of the second office was, *ipso facto*, a vacation of the first.

The alternative writ heretofore issued is quashed.

McALISTER and ROSS, JJ., concur.