[Civil No. 4398. Filed October 13, 1942.]

[129 Pac. (2d) 924.]

J. D. DUNSHEE, Petitioner, v. G. F. MANNING, as Superintendent of Public Health of the State of Arizona, Respondent.

Mr. Noal R. Gray and Mr. E. G. Frazier, for Petitioner.

Mr. Joe Conway, Attorney General, and Mr. W. E. Polley, Assistant Attorney General, for Respondent.

McALISTER, J.—On May 8, 1942, the court ordered issued an alternative writ of *mandamus* directing G. F. Manning, as state superintendent of public health, to approve the salary claim of the petitioner, J. D. Dunshee, as an employee of the public health department of the State of Arizona, or show cause why he has not done so. He did not approve the claim but in his return gave the reasons why. Along with the return he filed a motion to quash the alternative writ and dismiss the petition upon the ground that this court has no jurisdiction of the matter in that the petitioner has a plain, speedy and adequate remedy at law.

The matter is submitted to the court upon the uncontroverted allegations of the pleadings and an agreed statement of facts, and these in substance are as follows: The petitioner, J. D. Dunshee, a resident of Arizona, was employed on July 1, 1940, as local health director, at a salary of $375 per month, by the then Arizona superintendent of public health, Fred P. Perkins. The respondent, G. F. Manning, was not then, but at all times since July 1, 1941, has been, the duly appointed and acting superintendent of public health of Arizona.

The petitioner was employed under, and governed by, certain rules and regulations of the merit system, adopted by the Arizona state board of health on June 4, 1940, which have been in operation since that date. On September 25, 1940, Fred P. Perkins, then the duly appointed and acting superintendent of public health, left Arizona for service in the national guard and thereafter attended the surgeon generals' conference at Washington, D. C., for public health superintendents, purportedly as superintendent of public health of Arizona, on various occasions held conferences with officials and employees of the Arizona health department and by periodically returning to Arizona attempted to hold the office of superintendent of public health of the state and exercise the duties thereof. In an opinion rendered by this court on March 2, 1942, *Perkins* v. *Manning, ante,* p. 60, 122 Pac. (2d) 857, it was held that Perkins vacated the office of state superintendent of public health on September 25, 1940, by accepting the office of major in the national guard and leaving the state to perform the duties of that office. However, no successor to him was appointed until July 1, 1941, and on March 24th, prior thereto, he told petitioner to get himself another job, changed the locks on the door of the office occupied by petitioner, and denied him access thereto, and from then on to June 30, 1941, the petitioner devoted his full time and attention to other activities for which he received no compensation and performed no service in behalf of the state public health department, but would have done so had it not been for the action of Perkins, for he was at all times ready and willing to attend to the duties of his employment.

The petitioner failed to receive his salary for any of the period March 24 to June 30, 1941, and on April 27th, thereafter, presented his claim therefor, in the sum of $1,209.67, to the respondent, who refused to

approve it. During the period covered by this salary claim, respondent was in no way connected with the state board of public health but was director of the health service of Coconino County, Arizona, and if called as a witness would testify that he does not have any knowledge of the rendition of the services by the petitioner upon which the claim is based, and that he could not swear that petitioner had performed the services indicated upon said claim.

The contention of petitioner is that the action of Perkins discharging him was void and of no effect because: First, Perkins was not at the time he took this action the superintendent of public health; second, that even if he had the right to take such action, he did not, in doing so, comply with the rules and regulations of the merit system under which the petitioner had been employed and was then working. Inasmuch, therefore, as the order of dismissal was void and the petitioner stood ready and willing at all times thereafter to perform the duties of his employment, he contends that he is entitled, under the merit system, to his salary for the period involved.

Respondent, on the other hand, takes the position that Perkins did act within his powers in discharging petitioner; that he was not employed under a merit system but if it be held he was, he did not pursue the remedy prescribed therein to have the order dismissing him reviewed and set aside.

While it is true that Perkins did vacate the office of superintendent of public health on September 25, 1940, by accepting the office of major in the national guard and leaving the state to perform the duties thereof, the record discloses that by correspondence and occasional trips to Arizona he still discharged the duties of that office and that it was while here on one of these return trips that he discharged petitioner. There would appear to be no question but

that under the facts he was at least the superintendent of public health *de facto,* though not *de jure,* Annotations to 100 A. L. R. 1187, and, hence, that his act discharging the petitioner was within his power and, unless petitioner was under a merit system and the rules and regulations thereof were disregarded in discharging him, was valid.

It is the position of respondent that petitioner was not under a merit system for the reason that no such system was, or could have been, in existence at the time, since there was nothing in the statute, the public health code particularly, chapter 61, article 1, Revised Statutes of 1928, authorizing the board of health to adopt such a system. It is true this code did not specifically authorize the board of health to prepare and put in force a merit system, but it did provide in section 2679, R. S. 1928, that "The board [of health] shall make rules and regulations for the government of the board, its officers and its meetings;" and this, we think, was sufficient, if any authorization at all was necessary, to empower the board to adopt a merit system for the government of its own department and that the department was bound by it until changed by the board itself. In 1941, the 15th legislature made it mandatory upon the board to adopt and put in force a merit system. Section 7, chapter 105, session laws of that year.

In addition to this the parties say in their agreed statement of facts that petitioner *was employed under and governed by certain rules and regulations of the merit system adopted by the Arizona state board of health on June 4, 1940, which have been in operation since that date.* This, it would appear, forecloses any contention by respondent that there was at the time no merit system in force in the state health department and that petitioner was not employed under it.

■ The further contention is that petitioner did not pursue the remedy prescribed by the rules and regulations of the merit system to have the order discharging him reviewed and set aside. It is argued that he should have appealed the order of dismissal in accordance with section 55(d) of the merit system rules which reads as follows:

"A permanent employee who is dismissed, suspended, or demoted may appeal to the council."

Petitioner did not do this and for this reason respondent contends that he is not in a position to ask the aid of the court because the procedure set up in the rules themselves for adjusting such wrongs is exclusive and must be exhausted before an employee may resort to the courts. Section 49 of the rules reads as follows:

"*Dismissal.* The appointing authority, fifteen days after notice in writing to an employee stating specific reasons, may dismiss any employee who is negligent, inefficient, or unfit to perform his duties, guilty of gross misconduct, or convicted of crime involving moral turpitude. The employee shall have the right of appeal to the council."

If petitioner had been dismissed upon one of the grounds specified in this section, after he had been given the 15 days notice prescribed therein, there could be no question but that his only remedy would have been an appeal to the council (three persons appointed by the board of health) and its action would have been final. But the question the facts here present is whether petitioner was required to take such an appeal from an order dismissing him summarily without giving him 15 days notice in writing stating the specific reasons for his dismissal. It is only after such notice has been given that the appointing authority may dismiss an employee and it is only such a dismissal that an employee may appeal to the council.

Section 49 does not contemplate that an arbitary dismissal, such as took place in this case, may or will be made and hence confers no right whatever on the superintendent of public health to take such action. If, however, notwithstanding this, he should do so, his order would be wholly without jurisdiction, void and of no effect, the person involved remaining just as much an employee of the health department thereafter as he was before. The fact that an employee may be prevented by this unlawful action from discharging his duties cannot deprive him of his right to compensation where he stands ready and willing during the period covered by the claim to perform the duties for which he was employed. If one employed under a merit system may be discharged and deprived of his compensation, as was petitioner in this case, there is no value in merit systems, for they fail to accomplish the purpose for which they are enacted.

█ Respondent further urges that the motion to quash should be granted because section 27–101 Arizona Code Annotated 1939, reading as follows, gives petitioner an adequate remedy at law:

"*Authorized for claims on contract or negligence.*—Persons having claims on contract or for negligence against the state, which have been disallowed, may on the terms and conditions herein contained, bring action thereon against the state, and prosecute the same to final judgment."

Inasmuch as the petition discloses that the petitioner was employed on July 1, 1940, by the superintendent of public health of Arizona, respondent contends that the relationship between petitioner and the state was one of contract and that this statute applies. This proceeding was brought under section 28–201, Arizona Code Annotated 1939, which provides that one may have a writ of *mandamus* to compel the performance of an act which the law specially imposes as a duty

resulting from an office. The approval of the claim of an employee in any department of the state for services is a ministerial duty imposed by law upon the head of that department, and under *State* v. *Angle,* 56 Ariz. 46, 104 Pac. (2d) 172, no action in contract will lie unless and until his claim has been so approved. It was held in that case that *mandamus* to compel approval of a claim is the proper remedy where an employee of the state is unable to secure such approval. The state auditor, before passing on the validity of the claim and issuing a warrant in payment of it, must know that the services for which the claim is filed have been performed, and the law has provided, in section 10–206, Arizona Code Annotated 1939, that this shall be made known to that officer through the approval of the claim by the head of the department in which the service was rendered.

Respondent takes the position also that inasmuch as he was not superintendent of public health until July 1, 1941, and the claim of petitioner is for services covering a period prior thereto, he could not possibly have any personal knowledge concerning the matter and hence the duty to approve the claim for such services could not rest on him. However, the general rule applicable to such a situation is expressed in the following language in 46 C. J. page 1035, paragraph 301:

". . . As a general rule the duties imposed by law on public officers are functions and attributes of the office, and not of the officer; they remain, although the incumbent dies or is changed, and are to be performed by the incumbent, although they may have been left undone by the predecessor."

The fact that the respondent had no knowledge of the matter because it took place before he became superintendent of public health, did not, therefore, relieve him of this duty, though he acted wisely in declining

to pass on the claim since the situation presented a purely legal question which it was proper, and perhaps necessary, that the court determine before his duty in the premises could be made clear.

Respondent contends further that petitioner was an officer, not merely an employee, and hence was subject to dismissal at any time by the appointing authority. Both parties have devoted quite a little space in their briefs to this contention. But in view of the agreed statement quoted above, relative to petitioner's being employed under, and governed by, certain rules and regulations of the merit system adopted by the Arizona state board of health, June 4, 1940, this contention calls for no further consideration.

It is our view that a proper construction of the rules and regulations of the merit system under which petitioner was employed entitle him to his compensation, hence the alternative writ heretofore issued is made peremptory.

LOCKWOOD, C. J., and ROSS, J., concur.