IN THE MATTER OF JOSEPH S. VIVIANI.

Superior Court of New Jersey
Appellate Division

Argued May 25, 1982—Decided June 7, 1982.

Before Judges MATTHEWS, PRESSLER and PETRELLA.

*Arthur Meisel* argued the cause for appellants (*Jamieson, McCardell, Moore, Peskin & Spicer,* attorneys).

*Mark D. Schorr* argued the cause for respondent (*Sterns, Herbert & Weinroth,* attorneys).

*Mark J. Fleming,* Deputy Attorney General, submitted a Statement in Lieu of Brief on behalf of the Civil Service Commission (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

MATTHEWS, P. J. A. D.

This is an appeal from a final determination by the Civil Service Commission returning James Ware to the position of Director, Division of Unemployment and Disability Insurance in the New Jersey Department of Labor and Industry (hereinafter "Director, UDI").

On December 16, 1975 Ware, a state employee of long-standing, was permanently appointed to the classified position of Director, UDI. He served in that capacity until April 26, 1976 when he was granted a leave of absence without pay to serve an unclassified appointment as Assistant Commissioner, Income Security. Prior to accepting leave Ware had received a copy of a letter from the Department of Civil Service which explained that "the employee who has been granted a leave shall have a right to that class title and when necessary, may displace an employee who has been appointed at that title in the interim."

On July 5, 1976 Joseph Viviani was provisionally appointed to the position of Director, UDI, the position from which Ware had been granted leave. He was subsequently notified that he had attained permanent status in that position effective February 24, 1977. As a result of that appointment John Sullivan replaced Viviani as Assistant Director and Harry Morris replaced Sullivan as District Supervisor. Both were subsequently notified that they had attained permanent status in those positions.

Ware, meanwhile, on October 2, 1978 was granted a leave of absence with pay from his position as Assistant Commissioner, Income Security, to serve as Regional Administrator, Employment and Training, for the Federal Government pursuant to the Government Employee Interchange Act of 1967, *N.J.S.A.* 52:14–6.10 *et seq.* and the Intergovernmental Personnel Act of 1970, 5 *U.S.C.A.* 3371 *et seq.* Though Ware had believed that his leave was for a two-year period, he was later advised that pursuant to *N.J.S.A.* 52:14–6.14(a)[1] he could not serve under the exchange program for a term exceeding 12 months. He was further advised that he could remain in his current position by obtaining a leave of absence without pay. On September 20, 1979 Ware instead requested the Commissioner of the Department of Labor and Industry (Commissioner) to enter into a Letter of Agreement with the Regional Office pursuant to which he would be detailed to the Regional Office for 90 days. That detail, approved by the Commissioner, was orally extended thereafter for a period of 60 days.

On January 9, 1980 Ware sought the Commissioner's approval under the Intergovernmental Personnel Act to accept a federal appointment to the Executive Resources Board for the Employment and Training Administration. The request was disapproved by Civil Service because of the restrictions contained in *N.J.S.A.* 52:14–6.14(a). Consequently, on May 2, 1980 Ware requested and received a one-year leave of absence without pay to accept the federal appointment. For purposes of effectuating this leave, since such leaves may only be granted from classified titles, Ware was returned on paper to his classified position as

---

[1]*N.J.S.A.* 52:14–6.14(a) provides:

Any program of government employee interchange pursuant to this act shall be subject to the following terms, conditions and requirements:

(a) No period of individual assignment or detail to any receiving agency shall exceed 12 months, nor shall any participating employee be assigned or detailed to a receiving agency for more than 12 months during any 36-month period.

Director, UDI. His leave from this position was extended for an additional year to expire May 14, 1982.

The instant dispute arose on October 14, 1981 when Ware informed the Commissioner that he intended to return to his position as Director, UDI, beginning November 30, 1981. Because Viviani had attained permanent status in that position, the Commissioner requested advice from Civil Service as to the rights and status of the parties involved. On November 6, 1981, the Commissioner was informed by Civil Service that Ware had a right to resume his duties as Director, UDI, and, although Viviani had attained permanent status in that position, that "such status must at all times be considered conditional pending Mr. Ware's leave of absence." Consequently, the letter concluded, "upon any resumption of the Director's position by Mr. Ware, this other employee may be returned to his lower-level permanent Civil Service title which could also require the movement of other employees who had occupied appointments conditional on Mr. Ware's leave."

On November 10, 1981 Viviani appealed this determination to the Civil Service Commission, also requesting a stay of any personnel action which would return Ware to the Director's title. The application for the stay was denied and, consequently, effective January 18, 1982, Ware replaced Viviani as Director.

A hearing was held before the full Civil Service Commission on February 2, 1982. At the hearing the Director of Classification and Compensation for Civil Service testified that pursuant to long-standing Civil Service practice, a leave of absence without pay from a classified title is treated as if it creates a vacancy in that title which may be permanently filled by the appointing authority. He also explained, however, that a leave of absence also embraces an entitlement to be reinstated to the class title from which the leave was granted. Under ordinary circumstances, the department from which the leave is taken has the capacity to reinstate the individual to one of the positions in that class. The instant case presented a unique and unprece-

dented situation in that the class title in question consisted of only one position.

At a meeting held February 16, 1982 the Commission rendered an oral decision awarding the position to Ware, and thereafter filed a decision dated March 16, 1982. Preliminarily, the Commission held that a leave of absence included a right of return. It found that Ware had intended to return to his state position and that there was no basis upon which to conclude that he had abandoned that title. In addition, the Commission concluded that Viviani's appointment could only have been conditional, subject to the return of the incumbent. It found that Viviani knew or should have known that Ware was on a leave of absence from the Director, UDI, title and thus knowingly accepted an encumbered position.

Viviani essentially contends that the Commission acted arbitrarily in not resolving the instant dispute by resort to the regulations governing demotions and layoffs. Pursuant to those regulations, the order of demotion or dismissal is determined by seniority. *N.J.A.C.* 4:2–16.2. Since seniority does not accrue under this regulation while an individual is on a leave of absence without pay, Viviani asserts that he has acquired more seniority than Ware in the position of Director, UDI and thus is entitled to the job.

The argument was rejected by the Commission. It held that the demotion and layoff regulations were inapplicable to the instant case which required a determination of the purpose and effect of a leave of absence. It reasoned that to condition the right to be reinstated, inherent in an authorized leave, upon the acquisition of seniority would effectively be to render a leave of absence meaningless. Such an approach "would be counter to the reason for granting the leave in the first place."

The Commission's determination that a leave of absence necessarily embraces a right to be reinstated to the position left was in part derived from our opinion in *Blinn v. Public Emp. Retirem. Sys. Trustees,* 173 *N.J.Super.* 277 (App.Div.1980). There, this court explained:

We are convinced that the grant of a leave of absence to a state employee does not terminate the employment relationship between the state and the employee and that, during the term of such leave of absence, the employment relationship continues—albeit in an inactive status. The phrase "leave of absence" itself "connotes a continuity of the employment status," *Roche v. Board of Review*, 156 *N.J.Super.* 63, 65 (App.Div.1978); *Bowers v. American Bridge Co.*, 43 *N.J.Super.* 48 (App.Div.1956), aff'd o.b. 24 *N.J.* 390 (1957); *N.J.A.C.* 17:2–4.11. It is simply an authorized temporary absence from active service which, in the normal course and all other things being equal, implies the right of the employee to return to active employment in the employer's service at the conclusion of such leave of absence. Were it to be equated with a discontinuance or termination of employment, a leave of absence would be a meaningless term, signifying nothing. [at 278–279 ]

Defined in this way, the Commission concluded that a leave of absence from a classified position necessarily creates a prior claim to that position. Consequently, though the vacant position may be filled in the interim, it "cannot be permanently and unconditionally filled by a successor."

Though the terms "demotion" and "layoff" are broadly defined in the regulations [2] so as arguably to encompass even the instant situation, we conclude that the Commission did not act arbitrarily in precluding their application here and instead taking the approach that it did. The present dispute presented a question of novel impression. Under these circumstances the Commission determined that the demotion and layoff regulations were not intended to resolve such a situation nor did those regulations adequately recognize the rights inherent in a leave of absence. The Commission has acknowledged its obligation to promulgate regulations in this area,[3] however, it is clear that its

---

[2] As defined in *N.J.A.C.* 4:1–2.1, " 'demotion or reduction' means a lowering in rank or scale of compensation" and " 'layoff' means the separation of a permanent employee from his position for reasons other than delinquency or misconduct on his part."

[3] In its written decision, the Commission noted:

It is apparent that this complicated and difficult situation is, in part, the result of a void in Civil Service regulations and procedures concerning leaves of absence. The Commission understands its obligation to set clear regulations in these matters and directs that the Chief Examiner and

resolution of the instant case was not contrary to any of the existing regulations, nor unreasonable. A determination by the Civil Service Commission may not be upset by this court "in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated legislative policies expressed or implicit in the civil service act." *Campbell v. Civil Service Dept.*, 39 *N.J.* 556, 562 (1963). No such showing has been made here.

■ Viviani also contends that Ware effectively abandoned any claim he had to his position as Director, UDI by remaining in his intergovernmental assignment past the 12 months authorized by *N.J.S.A.* 52:14-6.14. This argument is without merit. As this court explained in *McAleer v. Jersey City Incinerator Auth.*, 79 *N.J.Super.* 142, 147 (App.Div.1963), "abandonment of employment by a public employee . . . must be total and absolute." In rejecting Viviani's contention the Commission found that "Ware at all times understood that he had sufficient approval for the leaves from his Civil Service title while serving in the federal government," and that he intended to return to his state position. These findings are adequately supported by both the documentary and testimonial evidence and therefore must be sustained. *Close v. Kordulak Bros.*, 44 *N.J.* 598, 599 (1965).

■ Last, Viviani contends that by accepting an incompatible office in the unclassified service Ware, as a matter of law, surrendered his position in the classified service. The common law doctrine of incompatible offices prohibits dual officeholding in which a conflict inheres in the functions or duties of the offices. *Reilly v. Ozzard*, 33 *N.J.* 529, 549 (1960). In such a case the acceptance of the second office has been held to vacate the first. *De Feo v. Smith*, 17 *N.J.* 183, 190 (1955). Clearly, there can be no conflict where, as here, there is no dual officeholding

---

Secretary expeditiously prepare or cause to be prepared, regulations for Commission review and adoption.

but rather the individual has taken a leave of absence from one position to perform a second. Thus, even assuming the offices in question here are incompatible (which they are not), that doctrine does not mandate the loss of Ware's claim to his classified position.

Affirmed.