Dear District Attorney Duncan,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Does the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301 — 4335, preempt the application of Article II, Section 12 of the Oklahoma Constitution, as such section has been construed by Wimberly v. Deacon, 144 P.2d 447 (Okla. 1944)?
 2. Does USERRA prohibit the State of Oklahoma from declaring a vacancy in a district attorney's office when the sitting district attorney is called into active duty as a commissioned officer, either voluntarily or involuntarily, in the United States Armed Forces?
¶ 1 Your questions require an analysis of Article II, Section 12 of the Oklahoma Constitution, Wimberly v. Deacon,144 P.2d 447 (Okla. 1944), and the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") 38 U.S.C. §§ 4301 — 4335. Your questions are specific to the application and effect of Article II, Section 12 of the Oklahoma Constitution, Wimberly, and USERRA upon an elected district attorney who has been called into active duty as a commissioned officer in the United States Armed Forces and have been addressed to respond to that situation. Article II, Section 12 of the Oklahoma Constitution provides that:
 No member of Congress from this State, or person holding any office of trust or profit under the laws of any other State, or of the United States, shall hold any office of trust or profit under the laws of this State.
Id.
¶ 2 Article II, Section 12 was specifically addressed inWimberly. In Wimberly, on March 23, 1942, C. O. Hunt was appointed as a member of the Board of Regents of the University of Oklahoma for a term expiring March 23, 1949. Mr. Hunt held a commission as a reserve officer in the United States Army and was ordered into active service on June 1, 1942. Without resigning his state office he entered into military duty as a commissioned officer. On August 17, 1942, the then Governor of Oklahoma, assuming that a vacancy existed on the Board of Regents, appointed Harrington Wimberly to the Board of Regents. Mr. Wimberly qualified and assumed the duties of the office. On June 25, 1943, Mr. Hunt filed a written resignation with the then Governor, who was the successor to the Governor who had appointed Mr. Wimberly, who then appointed Erl Deacon to the Board of Regents. Mr. Deacon also qualified and was received by the Board of Regents as a member on July 14, 1943. Mr. Wimberly brought the action to settle the conflicting claims. Id., 144 P.2d at 449. The court stated:
 We conclude, therefore, that the framers of our constitution used the words "office of trust or profit" according to their established meaning in 1907, and that such term includes a reserve officer engaged in active military duty in the Army of the United States.
Id. at 453.
¶ 3 The court continued:
 Did Hunt's membership on the Board of Regents ipso facto become vacant by his entry upon active military duty as a commissioned officer, without the necessity of a judicial determination of the fact that a vacancy existed? Under the overwhelming weight of authority this question should be answered in the affirmative.
Id. at 453.
¶ 4 The court found that:
 [T]he office was vacated by Hunt when he became a commissioned officer of the army on active duty. It was then within the power of the Governor to immediately fill the vacancy without awaiting a judicial determination of the existence of a vacancy.
Id. at 454.
¶ 5 In Wimberly, mere acceptance of the second office vacated the first office. The court found that "[t]o sustain the contention of petitioner [Wimberly] would be to subordinate the welfare of the state to the welfare of the officer." Id. at 454. Wimberly has not been overturned.
¶ 6 Constitutional or statutory prohibitions against holding two offices similar to Article II, Section 12 of the Oklahoma Constitution are not unusual. Alabama, Pennsylvania, Illinois, and Arkansas are examples of states which have constitutional or statutory prohibitions.See, e.g., Jones v. Clark, 644 S.W.2d 257 (Ark. 1983);State ex rel. Van Antwerp, Jr. v. Hogan, 218 So.2d 258 (Ala. 1969);Commonwealth ex rel. Crow v. Smith, 23 A.2d 440 (Pa. 1942);Fekete v. City of East St. Louis, 145 N.E. 692 (Ill. 1924). Some states, such as Arizona and New Jersey, rely on the common-law doctrine of incompatible offices to prohibit dual office holding. See,e.g., In re Viviani,446 A.2d 1239, 1244 (N.J. Super. Ct. App. Div. 1982); Perkins v.Manning, 122 P.2d 857 (Ariz. 1942). In Perkins, the court stated:
 We think that public policy requires that anyone accepting and retaining a public office should not place himself, by the accepting of another office, in such a position that it is physically impossible for him properly to perform the duties of both offices, and if the nature of the two offices is such that this impossibility does appear, the offices are incompatible and the acceptance of the second office, ipso facto, vacates the first.
Id. at 861.
¶ 7 It must also be noted that several states whose constitutions prohibit dual office holding have amended their constitutions so that active military service is allowed without the consequence of losing one's office. See, e.g, Cramer v. Sheppard,167 S.W.2d 147, 151 (Tex. 1942) (amending constitution to allow military service without losing office); State ex rel. Cooper v. Roth,44 N.E.2d 456, 458 (Ohio 1942) (providing an exception for service in the state militia but not service in the military forces of the United States); State ex. rel. Bland v. St. John,13 So.2d 161, 165 (Ala. 1943) (providing an exception for county officials to be in military service without vacating their office).
¶ 8 The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301 — 4335, was adopted in 1994:
 (1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;
 (2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and
 (3) to prohibit discrimination against persons because of their service in the uniformed services.
Id. § 4301(a).
¶ 9 USERRA provides that:
 [A]ny person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter. . . .
Id. § 4312(a).
¶ 10 It is clear that USERRA protects employees against the actions of their employers. Section 4311(b)-(c) prohibits an employer from both discriminating in employment and provides circumstances in which an employer shall be considered to have engaged in prohibited actions. Section 4312(d)(1) provides conditions under which an employer is not required to reemploy a person and states that "the employer shall have the burden of proving the impossibility or unreasonableness, undue hardship, or the brief or nonrecurrent nature of the employment. . . ."
¶ 11 Your questions require an analysis of whether an elected district attorney is an employee for the purposes of USERRA. USERRA defines "employee" at Section 4303(3) as "any person employed by an employer." The legislative history of 38 U.S.C.§ 4303 provides further insight into the definition of an employee. H.R. Rep. No. 103-65(I), at 26 (1993), reprinted in
1994 U.S.C.C.A.N. 2449, 2454, states that "Section 4303(3) would define `employee', in the same expansive manner as under the Fair Labor Standards Act, 29 U.S.C. § 203(e) except that `temporary' employees are not covered." Title 29 U.S.C. § 203(e)(2) defines an employee as:
 (C) [A]ny individual employed by a State, political subdivision of a State, or an interstate governmental agency, other than an individual-
 (i) who is not subject to the civil service laws of the State, political subdivision, or agency which employs him; and
 (ii) who-
 (I) holds a public elective office of that State, political subdivision, or agency. . . .
Id.
¶ 12 Based on this definition an elected district attorney is not an employee. Therefore, USERRA does not confer any right or benefit to a publicly elected district attorney. Article II, Section 12 of the Oklahoma Constitution is not preempted, and, as construed inWimberly, operates so that the district attorney, by entering into active duty, vacates his office as district attorney.
¶ 13 The Attorney General does not create or dictate policy, but is bound by the terms of the Oklahoma Constitution and Oklahoma case law. An elected district attorney who is serving on active military duty is fulfilling an admirable purpose, but, as Wimberly stated:
 [W]e point out that we are not, and must not be, concerned with the policy of the law as expressed in the constitutional provision. Only a question of law is presented, and the discussion of patriotic motives of public officers in our hour of national peril cannot and must not swerve us from correctly determining that question. . . . The Constitution means the same in war as in peace.
Id. 144 P.2d at 450.
¶ 14 Like the Supreme Court, the Attorney General must interpret the law as it is. In further discussing Article II, Section 12 of the Oklahoma Constitution Wimberly stated, "The very purpose of the rule of ipso facto vacation by the acceptance of a prohibited office is to prevent confusion and uncertainty." Id. at 453. In explaining the value of the rule the court quoted 42 Am.Jur. 941, stating:
 It is a certain and reliable rule, and one that is indispensable for the protection of the public. For the public has a right to know, in the case of attempted incompatible office holding, which office is held and which surrendered, and it should not be left to chance or to the uncertain whim of the office holder to determine.
Id. at 454.
¶ 15 Attorney General Opinion 84-108, states that "the purpose of Article II, Section 12 of the Oklahoma Constitution is to ensure that an Oklahoma official's loyalty and duty to Oklahoma not be diminished by an official loyalty and duty owed to a different sovereign."Id. at 198.
¶ 16 The court in Grand Jury v. Cecil,679 P.2d 1308 (Okla. 1983), while not addressing the subject of dual office holding, recognized the non-delegable duties of the office of the district attorney and stated:
 The public should be able to look to the one person they invested with sovereign power as responsible for the end result of that power. The district attorney may delegate his duties, but not his power nor ultimate responsibility.
Id. at 1310.
¶ 17 The district attorney may delegate the day-to-day responsibility for prosecuting cases to his assistants, but may not delegate the power or the ultimate responsibility as district attorney. This is consistent with the purpose of Article II, Section 12 of the Oklahoma Constitution, and the policy behind the provision which is to diminish the risk that a state official may owe a duty to another sovereign or master.
¶ 18 The conclusions herein raise the further question of the validity of the actions of the employees of the elected district attorney once he has begun active military service. Title 19 O.S. 2001, § 215.9[19-215.9] states:
 The district attorney shall designate one of the assistants in his district to be his first assistant district attorney and file such designation with the Secretary of State. Should the district attorney be absent, unable to attend to his duties, or disqualified to act, the first assistant district attorney may perform the duties required by law to be performed by the district attorney.
Id. The court in State ex rel. District Attorney v. Adams,794 P.2d 422 (Okla. 1990), stated:
 Title 19 O.S.Supp. 1989, § 215.9[19-215.9] requires the District Attorney to appoint a First Assistant and file such designation of office with the Secretary of State. After this requirement is met, and the designee has filed the oath as required by 51 O.S. 1989 § 2, [1] the statute allows the First Assistant District Attorney to perform the duties, required by law to be performed by the District Attorney, during the period of time between a resignation or death of the District Attorney and the appointment by the Governor of a qualified person to serve the balance of the District Attorney's unexpired term.
 We find that the First Assistant District Attorney became a de facto officer while he was exercising the functions of the District Attorney under color of authority pursuant to the statute.
Id. (emphasis added) (footnote added). The court further stated, "The acts of an officer de facto cannot be collaterally attacked."Id. (citing Hatfield v. Jimerson,365 P.2d 980, 982 (Okla. 1961)).
¶ 19 You also ask whether USERRA prohibits the State of Oklahoma from declaring a vacancy in a district attorney's office where the sitting district attorney is called into active duty as a commissioned officer in the United States Armed Forces. Under the circumstances set out in your second question, the elected district attorney has vacated his office by reason of being called to active duty as a commissioned officer in the United States Armed Forces. If the first assistant was properly designated and such designation filed with the Secretary of State as required by 19 O.S. 2001, § 215.9[19-215.9], the first assistant is the de facto district attorney. His actions have the same force and validity as if done by the elected district attorney until such time as the Governor appoints a successor to the elected district attorney. See 51 O.S. 2001, § 10[51-10](A) (stating vacancies in office, other than those specified, shall be filled by appointment by the Governor).
 ¶ 20 It is, therefore, the official Opinion of the Attorney General that:
 1. Article II, Section 12 of the Oklahoma Constitution provides that no person holding any office of trust or profit under the laws of the United States shall hold any office of trust or profit under the laws of the State of Oklahoma.
 2. Wimberly v. Deacon, 144 P.2d 447 (Okla. 1944), holds that a commissioned officer, while on active duty, holds an office of trust or profit under the United States government. As construed in Wimberly, Article II, Section 12 operates so that upon accepting the second office, the first is vacated.
 3. The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") 38 U.S.C. §§ 4301 — 4335, does not apply to the office of an elected district attorney as an elected district attorney is not an employee as defined by USERRA.
 4. Upon entering into active military service as a commissioned officer, the elected district attorney vacates his office as district attorney. See Wimberly, 144 P.2d at 453.
 5. When the office of district attorney is vacant, if the elected district attorney has properly appointed a first assistant, filed the designation with the Secretary of State, and the first assistant has filed the oath as required by 51 O.S. 2001, § 2[51-2], that first assistant functions as the de facto district attorney, until a replacement is appointed by the Governor.
E. SCOTT PRUITT Attorney General of Oklahoma
ELIZABETH RYAN Assistant Attorney General
[1] Title 51 O.S. 2001, § 2[51-2], pertaining to oaths was repealed by 2004 Okla. Sess. Laws ch. 408, § 2. *Page 1